UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ARLINE COHEN, ) | |
| ) | |
|     Plaintiff ) | |
| ) | |
| v. ) | Civil No. 08-130-P-S |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
|     Defendant ) | |

### *REPORT AND RECOMMENDED DECISION[1]*

This Social Security Disability ("SSD") appeal raises the question of whether the commissioner properly found that the plaintiff, who alleges that she has been disabled since August 28, 1989, by an affective disorder and a personality disorder, failed to show that those impairments were severe as of June 30, 1991, her date last insured. I recommend that the decision of the commissioner be vacated and the case remanded for further proceedings.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520, *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff last met the insured status

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on October 17, 2008, pursuant to Local Rule 16.3(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

requirements of the Social Security Act on June 30, 1991, Finding 1, Record at 16;[2] that, through her date last insured, she had medically determinable impairments of affective, anxiety-related, and personality disorders, obesity, asthma and diabetes mellitus, Finding 3, *id*.; that, through her date last insured, she did not have an impairment or combination of impairments that significantly limited her ability to perform basic work-related activities for 12 consecutive months and therefore did not have a severe impairment or combination of impairments, Finding 4, *id*. at 17; and that she therefore was not under a disability at any time from her alleged date of onset of disability through her date last insured, Finding 5, *id* at 20. The Appeals Council declined to review the decision, *id*. at 7-10, making it the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 2 of the sequential evaluation process. Although a claimant bears the burden of proof at this step, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1123 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when

---

[2] The administrative law judge mistakenly stated that the plaintiff's insured status expired on June 1, 1991. *Compare* Finding 2, Record at 16 *with id*. at 19, 148.

the medical evidence "establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* at 1124 (quoting Social Security Ruling 85-28).

The plaintiff complains that the administrative law judge erred (i) in ignoring relevant contemporaneous evidence in reaching the finding that her affective and personality disorders were not severe as of her date last insured, and (ii) in finding, inconsistently, that she had an "unsuccessful work attempt" in 1990 or 1991 that ended as a result of her impairments. *See* Itemized Statement of Errors Pursuant to Local Rule 16.3 Submitted by Plaintiff ("Statement of Errors") (Docket No. 7) at 2-6. I agree. Because, in view of these errors, the administrative law judge's Step 2 decision cannot be discerned to be supported by substantial evidence, reversal and remand for further proceedings are warranted.

## I. Discussion

The Record reflects that the plaintiff was sexually abused as a child, has longstanding mental health difficulties, and was admitted twice for inpatient psychiatric hospitalization prior to her date last insured. *See, e.g.*, Record at 226-30 (discharge summary detailing inpatient admission at Westbrook Community Hospital from August 28, 1989, to October 13, 1989, including plaintiff's reports that she had been sexually abused as a child and had been in and out of counseling since age 18, and discharge diagnoses, *inter alia*, of eating disorder/bulimia, major depressive episode, and features of dependent personality disorder), *id.* at 387-89 (discharge summary detailing inpatient admission at Augusta Mental Health Institute from March 15, 1983, to April 15, 1983, including final diagnoses, *inter alia*, of borderline personality disorder, and notation that plaintiff had "been rather unstable, emotionally, for some years, but her alternate

3

periods of depression, anger, and rumination on self harm ha[d] increased in intensity during recent months" following her father's death and mother's illness).

Following her 1989 psychiatric hospitalization, the plaintiff continued to complain to her primary-care providers of ongoing psychological difficulties, including eating-disorder problems, depression, and irritability. *See, e.g., id.* at 359 (Buspar prescribed for plaintiff on August 16, 1991, to address her poorly controlled anxiety), 367 (plaintiff noted as of May 15, 1991, to be seeing a psychologist at Coastal Behavioral Medicine; although therapy was primarily marital, primary-care physician Gary D. Enzmann, M.D., suggested that she ask the psychologist whether he agreed that she should wean herself from Imipramine, which she had been prescribed for depression), 376 (plaintiff noted as of November 29, 1990, to be improved on Imipramine and to be less depressed and sleeping better, but still to be having "major problems" and some panic attacks despite Xanax prescription), 377 (plaintiff noted as of November 1, 1990, to be increasingly anxious and irritable; prescribed trial of Imipramine).

The Record also contains an undated letter to Dr. Enzmann from Tom Burns, Ph.D., a certified psychologist from Coastal Psychiatric Associates, stating:

> I have seen Steven and Arlene [sic] Cohen three times subsequent to your referral for couples counseling. Both Mr. and Mrs. Cohen have significant personality disorders and chronic affective problems which will make their working together well as husband and wife very difficult under the best of circumstances. I have cautioned them that given the nature of their own individual problems (which they both freely acknowledge), couples therapy will be particularly difficult and uncertain in terms of outcome. They have both told me that they are highly motivated and very much want to try something positive for their relationship so I have agreed to try them on a highly structured course of mutual problem solving and communication training in spite of my own very guarded treatment expectations. . . .
>
> This is a challenging case . . . .

*Id.* at 342. At oral argument counsel for the commissioner conceded the point, made by the

4

plaintiff in her Statement of Errors, *see* Statement of Errors at 4, that Dr. Burns treated the plaintiff at roughly the time of her date last insured.

The administrative law judge found the plaintiff's psychological impairments non-severe from her alleged date of onset of August 28, 1989, through her date last insured of June 30, 1991, reasoning that:

1. Treatment notes indicated "fluctuating severity of symptoms but [did] not indicate that the claimant ha[d] any functional limitations due to psychological disorders." *Id*. at 19.

2. The plaintiff's worst complaint between 1989 and June 30, 1991, appeared "to have been some irritability[.]" *Id*.

3. While treatment notes indicated the plaintiff had complaints of bulimia and purging, they did not indicate that she suffered any functional limitations as a result of those disorders. *See id*.

4. The medical record reflected no difficulties performing activities of daily living, dealing with others, concentrating, persisting at tasks, or pacing activities. *See id*. There were no reports of inability to shop or go into stores to cash checks or inability to function outside of the home in any other way. *See id*. There were no reports of decompensation after 1989 and before July 1991. *See id*. The plaintiff took medication to control symptoms when needed, and discontinued it when she felt better. *See id*.

As the plaintiff points out, in making this Step 2 determination, the administrative law judge omitted any mention of the Burns letter. The letter is traceable to the period in question and suggests that her mental impairments indeed caused functional deficits in her ability to get along with her husband and, presumably, in other settings, including work settings had the plaintiff been working. *See* 20 C.F.R. 404.1521(b) (basic work activities include "[u]se of

judgment[,]" "[r]esponding appropriately to supervision, co-workers and usual work situations[,]" and "[d]ealing with changes in a routine work setting").

At oral argument, counsel for the commissioner, citing *Patrick v. Barnhart*, No. Civ.A.SA03CA0735FBNN, 2004 WL 1618815, at *8 (W.D. Tex. June 23, 2004), suggested that any error in mentioning the Burns letter was harmless given that the letter actually supports the administrative law judge's conclusion that the plaintiff had a medically determinable mental impairment but that it was non-severe, *see id.* (administrative law judge's error in failing to mention state agency medical consultant's report was not prejudicial when report supported administrative law judge's conclusions and was consistent with the plaintiff's testimony and the substantial evidence of record).

As the plaintiff's counsel rejoined at oral argument, the fact that Dr. Burns understandably did not catalog work-related functional restrictions in a progress note does not mean that his letter necessarily supports a finding of non-severity. To the contrary, the Burns note suffices to raise a serious question as to whether the plaintiff suffered from mental impairments significant and chronic enough to impose "severe" restrictions for purposes of Step 2 analysis. The administrative law judge's failure even to acknowledge Dr. Burns' note thus constitutes reversible error.

Beyond this, the Record contains no support from any treating or examining expert for the proposition that the plaintiff's mental impairments as of her date last insured were non-severe for purposes of Step 2 analysis. A Disability Determination Services ("DDS") non-examining consultant, Lewis F. Lester, Ph.D., provided an opinion dated May 21, 2004, that there was insufficient evidence of a mental impairment prior to the plaintiff's date last insured. *See* Record at 210. However, from all that appears, Dr. Lester did not have the benefit of review of

treatment records later submitted by the plaintiff's counsel. *See id*. at 200-01, 222. In any event, the administrative law judge found, contrary to Dr. Lester's report, that the plaintiff did have medically determinable mental impairments prior to her date last insured.

In these circumstances, the conclusion is inescapable that the administrative law judge judged the functional impact of the plaintiff's mental impairments on the basis of raw medical evidence. Such an exercise is supportable when a claimant's impairments are so minimal that, as a matter of common sense, they clearly are not disabling. *See, e.g., Gordils v. Secretary of Health & Human Servs*., 921 F.2d 327, 329 (1st Cir. 1990) (Although an administrative law judge is not precluded from "rendering common-sense judgments about functional capacity based on medical findings," he "is not qualified to assess residual functional capacity based on a bare medical record."); *Stanwood v. Bowen*, 643 F. Supp. 990, 991 (D. Me. 1986) ("Medical factors alone may be used only to screen out applicants whose impairments are so minimal that, as a matter of common sense, they are clearly not disabled from gainful employment. . . . [A]n impairment is to be found not severe only if it has such a minimal effect on the individual's ability to do basic work activities that it would not be expected to interfere with his ability to do most work.") (citations and internal quotation marks omitted). However, that cannot be said to have been the case here, given the plaintiff's longstanding mental health history, her two psychiatric inpatient hospitalizations prior to her date last insured, and her evidence of ongoing psychological difficulties, including functional difficulty sufficient to jeopardize her marriage, during the relevant period.[3]

As the plaintiff argues, *see* Statement of Errors at 5-6, the administrative law judge's

---

[3] Tellingly, the administrative law judge recognized the need to obtain an expert's retrospective opinion concerning the plaintiff's psychological functioning prior to her date last insured. *See* Record at 49-52. She held the record open to permit the plaintiff's counsel to file a retrospective opinion from her then treating psychiatrist. *See id*. at 54-55. The plaintiff submitted a letter dated July 24, 2007, from George Q. Hilton, M.D., but, unfortunately, Dr. Hilton addressed only her current condition. *See id*. at 453 ("My sense is that because of her multiple medical and psychiatric problems, she would be unable to hold down any employment.").

observation that she engaged in "an unsuccessful work attempt in 1990 or 1991 that ended within three months due to her impairments[,]" Record at 16, further undermines confidence in the supportability of her Step 2 finding. A person who has engaged in an "unsuccessful work attempt" necessarily has severe impairments. *Compare* 20 C.F.R. § 404.1521(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities") *with id*. § 404.1574(a)(1) ("We generally consider work that you are forced to stop or to reduce below the substantial gainful activity level after a short time because of your impairment to be an unsuccessful work attempt.").

At oral argument, counsel for the commissioner contended that (i) a trial work attempt is not necessarily inconsistent with a finding that a claimant has no severe impairments, a proposition for which he cited *Long v. Apfel*, 1 Fed. Appx. 326 (6th Cir. 1991), and, (ii) to the extent that there is a seeming inconsistency, the administrative law judge satisfactorily resolved it, a proposition for which counsel cited *Noyd v. Barnhart*, No. 01 C 15, 2002 WL 1559708 (N.D. Ill. July 12, 2002). *Long* is not persuasive authority for the proposition that there is no seeming inconsistency in such findings. While the *Long* court noted, on the one hand, that the administrative law judge had found at Step 1 that the plaintiff had engaged in an unsuccessful work attempt that ended as a result of her impairments, *Long*, 1 Fed. Appx. at 330, it also noted, on the other hand, that the administrative law judge had found "no corroborating evidence that the claimant's employment ended due to her physical condition[,]" *id.* 329 n.4. In going on to uphold the Step 2 non-severity finding, the court did not address the tension between these seemingly conflicting factual findings or between the Step 1 and Step 2 findings. *See id*. at 330-34.

*Noyd*, by contrast, recognizes that "[w]here the ALJ finds the claimant has made an

8

unsuccessful work attempt, but goes on to pronounce the claimant capable of performing substantial gainful activity without explaining why this conclusion is warranted despite the [unsuccessful work attempt] finding, the two determinations contradict one another." *Noyd*, 2002 WL 1559708, at *15. Counsel for the commissioner posited that, here, the administrative law judge reconciled the seeming inconsistency, giving the plaintiff the benefit of the doubt that perhaps her physical impairments forced her to stop working, but consistently finding that she suffered no severe mental health impairments. I find no indication that the administrative law judge recognized, let alone reconciled, the inconsistency between her Step 1 and Step 2 findings. *See* Record at 18-19.

At oral argument, counsel for the commissioner further argued that the Step 2 finding should be upheld on the basis that the administrative law judge supportably found that the plaintiff failed to meet the 12-month durational requirement for severity of symptoms. I agree with the plaintiff's counsel's rejoinder that there is sufficient evidence in the record of ongoing, chronic problems to preclude the administrative law judge, as a layperson, from judging that the durational requirement was not met.

In short, the Step 2 finding cannot be discerned to be supported by substantial evidence of record. Reversal and remand accordingly are warranted.

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **VACATED** and the case **REMANDED** for further proceedings consistent herewith.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for*

*which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 5th day of November, 2008.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge